898 F.2d 801
 283 U.S.App.D.C. 204
 TENNESSEE GAS PIPELINE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
Amoco Production Company, Long Island Lighting Company,
Texaco Gas Marketing, Inc., Intervenors.
ANR PIPELINE COMPANY, Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 Nos. 88-1688, 89-1350.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 3, 1989.
Decided March 23, 1990.
 
 Petitions for Review of Orders of the Federal Energy Regulatory Commission.
 Marilyn L. Doria, Houston, Tex., with whom Terence J. Collins, Washington, D.C. was on the brief, for petitioner Tennessee Gas Pipeline Co.
 William W. Brackett, with whom Daniel F. Collins, Washington, D.C. was on the brief, for petitioner ANR Pipeline Co.
 Dwight C. Alpern, Atty., F.E.R.C. ("FERC"), with whom Catherine C. Cook, Gen. Counsel, and Joseph S. Davies, Deputy Sol., FERC, Washington, D.C., were on the brief, for respondent. Frank R. Lindh and Katherine Waldbauer, Attys., FERC, Washington, D.C., also entered appearances for respondent.
 J. Paul Douglas and Richard A. Drom, Washington, D.C. entered appearances for intervenor Amoco Production Co. in No. 88-1688.
 James J. Stoker III and James F. Bowe, Jr., Tamaqua, Pa., entered appearances for intervenor Long Island Lighting Co. in No. 88-1688.
 Mickey J. Lawrence and John P. Beall, Houston, Tex., entered appearances for intervenor Texaco Gas Marketing, Inc. in No. 88-1688.
 Before BUCKLEY and SENTELLE, Circuit Judges, and ROBINSON, Senior Circuit Judge.
 Opinion for the court filed by Circuit Judge BUCKLEY.
 BUCKLEY, Circuit Judge:
 
 
 1
 Tennessee Gas Pipeline Company and ANR Pipeline Company petition for review of the Federal Energy Regulatory Commission's dismissal as moot of several applications for individual certificates of public convenience to transport natural gas under the Natural Gas Act. Both applicants were already in possession of blanket certificates that authorized the transportation services in question. Because petitioners have not shown that the Commission's dismissal of the individual certificate applications has prevented them from carrying out any of the services for which they seek specific authorization, we deny the petitions for review.
 
 I. BACKGROUND
 A. Regulatory Background
 
 2
 Section 7 of the Natural Gas Act ("NGA" or "Act") provides in relevant part that:
 
 
 3
 (c)(1)(A) No natural-gas company ... shall engage in the transportation or sale of natural gas, subject to the jurisdiction of the Commission, ... unless there is in force with respect to such natural-gas company a certificate of public convenience and necessity issued by the Commission authorizing such acts or operations....
 
 
 4
 ....
 
 
 5
 (e) ... [A] certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operation, sale [or] service ... covered by the application, if it is found that the applicant is able and willing properly to do the acts and to perform the service proposed ... and that the proposed service ..., to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied. The Commission shall have the power to attach to the issuance of the certificate and to the exercise of the rights granted thereunder such reasonable terms and conditions as the public convenience and necessity may require.
 
 
 6
 15 U.S.C. Sec. 717f(c), (e) (1988). Although the Commission traditionally considered and issued certificates of public convenience and necessity with respect to specifically described transportation services, in 1985 it issued Order No. 436 which provides, in pertinent part, as follows:
 
 
 7
 (a) Blanket certificate. Any interstate pipeline may apply under this section for a single blanket certificate authorizing the transportation of natural gas on behalf of others in accordance with this subpart. A certificate of public convenience and necessity under this section is granted pursuant to section 7 of the Natural Gas Act.
 
 
 8
 18 C.F.R. Sec. 284.221(a)-(b) (1989). The purpose of this order was to open up the transportation market for natural gas. To that end, blanket certificates allow pipelines to transport gas for any shipper, for any end-use, for any duration, and with pre-granted authority to abandon service at the expiration of a contract.
 
 
 9
 Blanket certificates are only issued upon application, and the Commission made it clear, in Order No. 436-D, that "any pipeline not willing to apply for a new blanket certificate may, as an alternative, request authority under section 7(c)." 34 F.E.R.C. p 61,405, at p. 61,758 (1986). Nonetheless, the inducement to apply for a blanket certificate is great because of the prospective savings in time and expense for the pipeline compared to filing a traditional section 7 application for each of the individual service contracts it subsequently enters into.
 
 
 10
 This court upheld Order No. 436 in most respects in Associated Gas Distribs. v. FERC, 824 F.2d 981 (D.C.Cir.1987), cert. denied sub nom. Interstate Natural Gas Ass'n v. FERC, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988). In that opinion, Judge Williams described the order as envisaging a complete restructuring of the natural gas industry. Id. at 993. After remand, the order was modified, in respects not relevant here, in Order No. 500, 52 Fed.Reg. 30,334 (1987).
 
 B. Procedural Background
 
 11
 Between May 1985 and September 1987, Tennessee Gas Pipeline Company ("Tennessee") had a number of applications pending for case-specific certificates under section 7. On June 18, 1987, the Commission granted Tennessee a blanket certificate under Order No. 436. 39 F.E.R.C. p 61,337 (1987). Tennessee accepted the blanket certificate and withdrew all but the fifteen case-specific applications here at issue. Thereafter, FERC dismissed these fifteen applications as moot. 43 F.E.R.C. p 61,042 (1988). FERC viewed the authority sought by Tennessee as already granted by the previously issued blanket certificate and dismissed the applications as redundant. In denying Tennessee's motion for rehearing, the Commission rejected Tennessee's arguments that the case-specific certificates were necessary, finding that no specific circumstances warranting individual certificates had been alleged. 44 F.E.R.C. p 61,094 at 61,269 (1988).
 
 
 12
 In the meanwhile, between April 1986 and April 1988, ANR Pipeline Company ("ANR") filed for three case-specific certificates to authorize transportation services under section 7(c). On July 25, 1988, the Commission issued ANR an Order No. 436 blanket certificate. 44 F.E.R.C. p 61,126 (1988). On February 24, 1989, FERC dismissed ANR's three outstanding applications as moot. 46 F.E.R.C. p 61,232 (1989). The Commission denied ANR's motion for rehearing on April 26, 1989, relying on its orders in the Tennessee applications. 47 F.E.R.C. p 61,107 (1989).
 
 
 13
 Both Tennessee and ANR seek review in these consolidated petitions. They argue that contrary to the Commission's view, the case-specific certificates applied for are not redundant, that they are preferable to blanket certificates, and that the Commission was compelled by the statutory language of section 7(e) to issue "a certificate"--in this case an individual certificate--to the petitioners if it found the proposed service covered by each application to be in the public interest.
 
 II. DISCUSSION
 
 14
 This case presents two questions: The first is whether the Commission has the discretion, under the Act, to refuse a pipeline's application for a case-specific certificate on the sole ground that the applicant already holds a blanket certificate that provides it with authority to furnish the services sought to be certified. If we find that it does, we reach the second question, namely, whether petitioners' blanket certificates provide them all the authority they are legally entitled to receive under the statute upon filing for a certificate of public convenience and necessity.
 
 
 15
 A. Commission's Obligation to Grant "a Certificate"
 
 
 16
 Petitioners argue that section 7(e) of the Act imposes certain affirmative obligations on the Commission. They assert that, in the first instance, the Commission is obliged to make a finding whether the applicant is "able and willing properly to do the acts and to perform the service proposed" and whether that service "is or will be required by the present or future public convenience and necessity," 15 U.S.C. Sec. 717f(e); if its findings are in the affirmative, "[a] certificate shall be issued " to the applicant. Id. (emphasis added). For its part, the Commission argues that it is in compliance with the purposes of section 7(e) because the blanket certificates it has already issued to petitioners provide them with all the authority they need to provide the services applied for, and that the Act does not require the issuance of redundant certificates.
 
 
 17
 As the Supreme Court has pointed out on repeated occasions, agencies enjoy broad discretion in interpreting statutes entrusted to their administration so long as their construction is permissible. See K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 292, 108 S.Ct. 1811, 1816, 100 L.Ed.2d 313 (1988); United States v. Boyle, 469 U.S. 241, 246 & n. 4, 105 S.Ct. 687, 690 & n. 4, 83 L.Ed.2d 622 (1985). We have already recognized that FERC may have legitimate policy interests in denying individual certificates to pipelines that already have blanket certificates authorizing the transportation at issue. ANR Pipeline Co. v. FERC, 876 F.2d 124, 129 & n. 3 (D.C.Cir.1989). We find it entirely reasonable, in these instances, for FERC to decline to issue case-specific certificates to applicants who already have the authority, pursuant to blanket certificates issued under section 7(e), to provide the service contemplated by their new applications. We see no reason for supposing that Congress intended to impose on the agency the administrative burden of processing redundant applications.
 
 
 18
 This is not to say, nor do we hold, that the issuance of a blanket certificate will satisfy the Commission's obligations under section 7(c) in all circumstances. Indeed the Commission has stated that it will consider, on a case-by-case basis, the reasons offered by a blanket certificate holder in support of the issuance of an individual certificate. See 44 F.E.R.C. at 61,269. The Commission has, in fact, issued individual certificates to Tennessee for transportation services where it found them necessary because of new construction undertaken as an integral part of the service in question. See, e.g., 44 F.E.R.C. p 61,013 at 61,066 (1988); 43 F.E.R.C. p 61,417 at 62,069 (1988); 43 F.E.R.C. p 61,267 at 61,739 (1988). Absent such a showing, we conclude that the issuance of a blanket certificate will discharge the Commission's duty to certificate service that is "required by the present or future public convenience and necessity." 15 U.S.C. Sec. 717f(e).
 
 
 19
 B. Adequacy of Petitioners' Blanket Certificate
 
 
 20
 Petitioners next argue that even if a blanket certificate will generally satisfy section 7, nonetheless, in these instances FERC's refusal to issue individual certificates will deny them authorization to which they are legally entitled. They point to a number of differences in the terms and conditions of the blanket certificates currently held by them and the individual certificates they seek. Section 7(e), however, requires only that the certificate authorize the service covered in the application. Thus the only issue before us is whether petitioners currently possess, by virtue of their blanket certificates, all the authority they need to perform the services for which they have filed individual applications.
 
 
 21
 In this instance, petitioners have made resolution of this issue simple. They have not pointed to one example of a service they could not undertake for lack of an individual certificate. Their claim consists primarily of the assertion that certain customers would have preferred service under an individual certificate, but the record is devoid of any evidence that any of the underlying transportation contracts, or any financing requirements, made obtaining a case-specific certificate a necessity of the services at issue.
 
 
 22
 The Commission stated, in its order dismissing Tennessee's applications, that Tennessee's blanket certificate gives it "full authority to perform the section 7(c) transportation transactions proposed in the dockets at issue herein." 43 F.E.R.C. at 61,126. The same conclusion applies to ANR's request. 46 F.E.R.C. at 61,697. Because petitioners do not point to any aspect of the operation for which authorization was sought that cannot be performed under their existing certificates, we find no basis for overturning the Commission's decision.
 
 III. CONCLUSION
 
 23
 Section 7 of the NGA does not oblige the Commission to issue individual certificates to applicants who already have authority, under blanket certificates, to perform the services for which they seek specific certification. As petitioners have failed to show they do not already have the authority required to provide the services applied for, their petitions for review are denied.
 
 
 24
 So ordered.